UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHNNY EAGLE,

               Plaintiff,                                  Case No. 08-11035

v.                                            Honorable David M. Lawson

                                            Magistrate Judge Virginia M. Morgan

GILBERT, RYAN, LAMB, and
JOHN DOE,

               Defendants.

_____/

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION,
OVERRULING PLAINTIFF'S OBJECTIONS, GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT, AND DISMISSING CASE WITHOUT PREJUDICE**

This matter is before the Court on the plaintiff's objections to a report by Magistrate Judge

Virginia M. Morgan recommending that the defendants' motion for summary judgment be granted

and the case dismissed because the plaintiff did not exhaust his administrative remedies as required

by the Prison Litigation Reform Act (PLRA).  The plaintiff filed a complaint against the defendants

alleging that they interfered with his opportunity to attend religious services on Sundays by keeping

him locked in his cell.  He contends that inmates of different religious persuasions were allowed to

attend their services, and therefore the defendants violated his rights under the Equal Protection

Clause of the Fourteenth Amendment.  The defendants moved for summary judgment raising, among

other things, the argument that the plaintiff did not exhaust his administrative remedies.  Judge

Morgan addressed the motion under an order of reference for general case management.  On October

20, 2008, Judge Morgan issued her report recommending that the defendants' motion be granted.

The plaintiff filed timely objections. The Court has conducted a *de novo* review of the matter and

now concludes that the plaintiff's objections to the report and recommendation lack merit, and

although the magistrate judge did not consider one of the plaintiff's arguments, her decision that

proper exhaustion has not occurred ultimately was correct and the complaint should be dismissed.

Therefore, the Court will overrule the objections, adopt the magistrate judge's recommendation,

grant the motion for summary judgment, and dismiss the case without prejudice.

I.

The plaintiff is an inmate in the custody of the Michigan Department of Corrections. He was

housed at the G. Robert Cotton Correctional Facility at the time of the events described in this

lawsuit. He alleges in his amended complaint that he was prevented from attending a protestant

Christian religious service held at the prison. From October 2005 to July 2006, the plaintiff was

assigned to a work detail on Sundays from six in the morning until noon. Corrections officer Lamb

refused to allow the plaintiff to attend the service while he was on work detail. Because this

assignment interfered with the plaintiff's ability to attend the services, the plaintiff made eleven

requests to defendant MDOC employee Robin Gilbert that his shift be changed. Gilbert and the

classification director refused to change his work shift. However, the plaintiff claims that during

this period, a Muslim prisoner's work shift was changed to allow him to attend religious services.

The plaintiff believes that this action constitutes religious discrimination and interferes with

his free exercise of religion. He claims that he attempted to file a grievance in accordance with

MDOC policy, but "it mysteriously disappeared." Am. Compl. at 2. He also sent request slips to

MDOC employee Ryan, which "also seemed to vanish." *Ibid.*

On July 10, 2006, the plaintiff apparently sent a letter to the "Director's Office" in Lansing,

Michigan, which he identified as "Step III Grievance – Religious Discrimination and Staff

Corruption." Am. Compl., Ex. The letter states:

> From March 15, 2006 to July 10, 2006 (today) I have been locked in my cell
> while Sunday morning All Faith Church (Protestant) services were being held.

Correction Officer Lamb would not let me out of my cell to attend.  He claims I was working but how can I work while locked in my cell?

I was on a work detail but nobody worked on Sunday from 6:00 am to noon during the time I have been at Cotton (October 05 to July 10, 06).  ARUS Gilbert had eleven (11) changes to change my shift and by action or lack thereof has shown she is corrupt by not changing my shift while changing the shift of those that are Muslim.  RUM Ryan does corroborate [sic] with her by doing nothing to correct the problem.  The Classification Director also played a part in this.

This is in violation of my Constitutional Rights. . . .

*Ibid.*  On January 26, 2007, he sent a follow-up letter inquiring about the status of his "Step III Religious Discrimination Grievance" of July 10, 2006.

On March 11, 2008, the plaintiff filed a complaint in this Court.  The Court referred pretrial matters to Magistrate Judge Morgan pursuant to 28 U.S.C. § 636(b).  The magistrate judge granted the defendants' motion for a more definite statement, and ordered the plaintiff to file an amended complaint, which the plaintiff did.  The amended complaint alleges that the defendants' actions violate the First Amendment and the rights of prisoners, and seeks as relief $17 million.  The defendants moved for summary judgment on the ground that the plaintiff failed to exhaust his administrative remedies.  In their motion, they claim that the plaintiff filed only one grievance that was appealed through Step III, and it involves allegations not at issue in the present case.

On October 20, 2008, Judge Morgan filed a report recommending that the Court grant the defendants' motion for summary judgment.  She concluded that the plaintiff had failed to exhaust his administrative remedies, as required by the PLRA.  The only grievance in the record, she decided, did not deal with the issues raised in the plaintiff's amended complaint, so it did not exhaust those issues.

Discussing the letters attached as exhibits to the plaintiff's amended complaint, the magistrate judge concluded that the plaintiff was not excused from following proper grievance procedures simply because he alleged that his Step I grievance had "mysteriously disappeared." The magistrate judge decided that the plaintiff made only "vague claims that his failure to exhaust was not his fault," and therefore she would not exercise her "discretion" to find that the plaintiff complied with the exhaustion requirements of the PLRA. Rep. & Rec. at 7 (citing *Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999)).

The plaintiff filed timely objections to the report and recommendation.

II.

Objections to a report and recommendation are reviewed *de novo*. 28 U.S.C. § 636(b)(1). The Sixth Circuit has stated that "[o]verly general objections do not satisfy the objection requirement." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie,* 50 F.3d 373, 380 (6th Cir.1995). "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general." *Spencer*, 449 F.3d at 725 (quoting *Miller*, 50 F.3d at 380).

The plaintiff sent a letter to the Court within the time allowed for objections to the magistrate judge's report. The Court construes the letter as an objection. In the letter, the plaintiff disputes the magistrate judge's conclusion about exhaustion, contending that he complied with the grievance policy because under Policy Directive 03.02.130, allegations of discrimination and corruption may be brought directly to Step III, bypassing the earlier stages. He claims that he did this by sending a letter to the office of the director, so he believes that he has satisfied the grievance procedure and

fully exhausted his administrative remedies. He suggests that perhaps he requires legal assistance to explain how he erred, and posits that perhaps he is too intelligent (with an IQ of 146) to understand simple things.

The issues raised by the defendants' motion require the Court to refer to matters beyond the pleadings in the case, so the motion was considered properly under Rule 56. A motion for summary judgment under Federal Rule of Civil Procedure 56 presumes the absence of a genuine issue of material fact for trial. The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotes omitted). There are no disputed factual issues presented by the defendants' motion. The dispute focuses on the consequences that flow from the facts as established.

The Prison Litigation Reform Act prohibits the filing of lawsuits alleging a violation of federal law "with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). The failure to exhaust is an affirmative defense that must be proved by the defendant. *Id.* at 212; *Kramer v. Wilkinson*, 226 F. App'x 461, 462 (6th Cir. Mar. 21, 2007) (holding that failure to exhaust "may serve as a basis for dismissal only if raised and proven by the defendants."). If a prisoner presents

both exhausted and unexhausted claims, the Court may proceed to consider the exhausted claims. *Jones*, 549 U.S. at 223-24.

The Supreme Court has held that the exhaustion requirements of the PLRA mandates "proper exhaustion" within the rules established by the particular state's laws. *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Ibid.* The Court explained the rationale behind that requirement:

> First, exhaustion protects administrative agency authority. . . . Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures. . . .
>
> Second, exhaustion promotes efficiency. . . . Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court. In some cases, claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court. . . . And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration.

*Id.* at 89 (internal quotes, alterations, and citations omitted).

However, although prescribed procedures must be followed in order to "properly exhaust" administrative remedies, the exhaustion requirement is not a mandate for observance of meaningless ritual. Substantial compliance is sufficient to fulfill the requirement of the PLRA. *Curry v. Scott*, 249 F.3d 493, 502 (6th Cir. 2001); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

At the time of the incident, the Michigan Department of Corrections had a policy directive applicable to prisoners who wish to grieve actions taken against them or complain about prison conditions:

> In an effort to resolve grievable issues as soon as possible, prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control.  If the complaint is not resolved, the grievant may file a Step I grievance.

PD 03.02.130(R) (12/19/03).  Step I must be filed "[w]ithin five business days after attempting to resolve a grievable issue with staff."  PD 03.02.130(X).  The grievance must specify "[d]ates, times, places[,] and names of all those involved."  PD 03.02.130(T).  If the grievance is not acted upon within the time limits, the prisoner may appeal within ten days of the expiration of the deadline.  PD 03.02.130(V).  If there is a response with which the prisoner is unsatisfied, he may appeal to the Step II Grievance Coordinator.  PD 03.02.130(DD).  Step I and Step II grievances are decided by specially designated staff members.  PD 03.02.130(P).  If the prisoner is still unsatisfied, he may appeal to Step III, where his grievance is sent to the Prisoner Affairs Section.  PD 03.02.130(HH).  A grievant is required to use "the Prisoner/Parolee Grievance Appeal form (CSJ-247B)" to file a Step II or Step III grievance.  PD 03.02.130(T).

However, the policy directive contains an exception to the usual procedure in certain circumstances:

> A grievant may file a grievance alleging racial or ethnic discrimination or staff brutality or corruption directly to Step III. . . . . In such cases, the Step III grievance must be sent to the Prisoner Affairs Section within the time frame set forth in Paragraph X for filing Step I grievances.  Upon receipt, the grievance shall be carefully reviewed to determine whether to respond directly to the grievance, request an investigation into the issue raised in the grievance, or return it to the grievant for filing at Step I.

PD 03.02.130(S).

The magistrate judge failed to consider whether the plaintiff's letter dated July 10, 2006 qualified as a proper grievance under paragraph S of the prison policy.  However, a review of the

letter demonstrates that the plaintiff was complaining neither of "racial [n]or ethnic discrimination," but instead made a complaint of *religious* discrimination.  He complains that he was treated poorly by the staff, which he claims shows corruption.  But in the legal context, corruption does not equate to racial or ethnic discrimination; rather, it typically implies making official decisions on the basis of some personal benefit, such as accepting or demanding a bribe.  *See* Black's Law Dictionary (8th ed. 2004); *see also Kruse v. City of Cincinnati*, 142 F.3d 907, 913 (6th Cir. 1998).  Under Michigan law, at least in some circumstances, corruption can mean "'purposeful misbehavior or wrongful conduct.'"  *People v. Hardrick*, 258 Mich. App. 238, 246, 671 N.W.2d 548, 553 (2003) (quoting *People v. Thomas*, 438 Mich. 448, 461 n. 6, 475 N.W.2d 288, 294 n. 6 (1991) (Boyle, J., concurring)).  The plaintiff accuses the prison officials as being corrupt apparently due to their accommodation of others, but not him.  Whether this actually qualifies as "corruption" under the MDOC policy is far from clear.  It certainly does not amount to a claim of racial or ethnic discrimination.  Nevertheless, even if the grievance does not contain allegations of a Step III directly grievable offense, it should have been returned to the plaintiff for refiling at Step I, per prison policy.

The grievance also might be viewed as suffering from a different flaw: it was never presented to the Step III level in the proper format; however, the Court must reject that argument.  Grievances at Step III normally are required to be presented on "the Prisoner/Parolee Grievance Appeal form (CSJ-247B)."  PD 03.02.130(T).  Although there is no explicit exception from this rule for grievances brought directly to the Step III level, this particular form is designed to accommodate an appeal, and not a direct grievance.  For example, conspicuously placed at the top of the form is the statement: "**INSTRUCTIONS:** THIS FORM IS ONLY TO BE USED TO APPEAL A STEP I GRIEVANCE."  *See* Def.s' Mot. for Summ. J., Ex. B.  The entire form is premised on the Step III

action being an appeal, and not an original complaint.  It would make little sense to require the plaintiff to conform his grievance to a form not designed for it, and the Court will not interpret the MDOC policy to require such a useless action.

Finally, there is the question whether the plaintiff submitted the grievance to the proper authority.  The MDOC policy directive requires that the Step III grievance be sent to Prisoner Affairs Section.  PD 03.02.130(S) & (HH).  The July 10, 2006 letter was apparently sent to the Office of the Director of the Michigan Department of Corrections, rather than the Prisoner Affairs section. This might explain why the letter was not acted upon.  Sending the grievance to the correct place is one of the procedural requirements to properly exhaust under the Michigan policies, which control the exhaustion inquiry.  *See Woodford*, 548 U.S. at 102.  The plaintiff failed to comply with that requirement.

### III.

The nature of the harm described by the plaintiff did not allow him to bypass the first levels of the grievance process prescribed by MDOC rules.  Even if the plaintiff intended to raise claims of racial or ethnic discrimination, which would have permitted him to proceed directly to step III, he had an obligation to send his grievance to the proper authority, which he failed to do.  Because the plaintiff did not properly exhaust his administrative remedies under the prison policy, the Court agrees with the magistrate judge that the plaintiff did not satisfy the exhaustion requirements mandated by the PRLA.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [dkt #23] is **ADOPTED**.

It is further **ORDERED** that the plaintiff's objections [dkt #26] to the report and recommendation are **OVERRULED**.

It is further **ORDERED** that the defendants' motion for summary judgment [dkt #14] is **GRANTED**.

It is further **ORDERED** that the case is **DISMISSED WITHOUT PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: April 17, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 17, 2009.

s/Susan K Pinkowski
SUSAN K. PINKOWSKI

---